UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
KIRSTEN MCCANDLESS, on behalf of        )
herself and all others similarly situated,   )
                                        )
                        Plaintiffs,     )     CIVIL ACTION NO.  1:07-cv-11850 RCL
                                        )
v.                                      )
                                        )
STAPLES, INC.                           )
                                        )
                        Defendant.      )
_____)

MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT AND PROVISIONAL CERTIFICATION OF
SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

The parties respectfully submit this memorandum in support of their Joint Motion for

Preliminary Approval of Proposed Settlement and Provisional Certification of Settlement Class

for Settlement Purposes Only (the "Motion").  A copy of the Settlement Agreement (the

"Settlement" or "Settlement Agreement"), executed by all parties and their Counsel, has been

filed with the Court in conjunction with the Motion.  If approved, this Settlement will resolve the

Plaintiff's and the Settlement Class's claims against the Defendant.

## I.      INTRODUCTION

The parties jointly move for preliminary approval of this collective and class action

settlement, which has been reached after more than sixteen months of arms-length, good faith

negotiations, including two day-long mediation sessions, substantial written exchanges,

thousands of pages of discovery and extensive telephone conferences.  The settlement provides a

fair, adequate and reasonable recovery to a class of current and former employees of Staples, Inc.

("Defendant" or "Staples") who held the job classification of Senior Product Solutions

Specialists in Massachusetts (hereinafter "Specialists") between October 1, 2004 and June 30, 2008 and who have filed consents to join the Action and who have not opted-out of the Action (collectively the "Settlement Class"). The recovery is for wages under the Massachusetts Wage Weekly Payment of Wages Act, G.L. c. 149 §148 (the "Wage Statute"), the Massachusetts overtime statute, M.G.L. c. 151, §§1A and 1B (the "Overtime Statute") and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

## II.    **BACKGROUND**

### A.    Procedural History.

Plaintiff, Kirsten McCandless (hereinafter "Plaintiff") commenced this action against Defendant, Staples, Inc. (hereinafter "Defendant")[1] on October 1, 2007 and asserted claims under the FLSA, the Overtime Statute, Wages Statute seeking to recover unpaid wages allegedly owed to Specialists.

More specifically, the Plaintiff alleges that Specialists were improperly classified as exempt from overtime under federal and state law, and therefore neither she nor the Settlement Class members were paid for time worked in excess of forty hours per week. Defendant denies any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Complaint and the Amended Complaint, and asserts that it properly classified the Specialists as exempt employees under federal and state law, that it complied with the complex legal requirements, and that it has valid defenses to the Plaintiff's claims.

At the scheduling conference on February 14, 2008,[2] the parties mutually decided to

---

[1] It is Defendant's position that at all times relevant to this action, Plaintiff is and was employed by Staples Contract and Commercial, Inc. ("SCC"), not Staples, Inc., and therefore SCC is the proper defendant in this case.

[2] At the Scheduling Conference, the parties agreed to toll the FLSA claims that would continue to run in the absence of such an agreement while they pursued settlement negotiations. The parties filed a joint motion to toll the statute of limitations on March 6, 2008.

pursue settlement of this case.  The parties engaged in arms-length, comprehensive and

adversarial negotiations that began in February 2008 and included extensive settlement meetings,

witness interviews and conferences between the parties; the exchange of written information,

informal discovery and legal arguments on the merits; and a series of interviews of Staples

employees by Plaintiff's counsel and third-party computer forensic experts retained by Plaintiff's

counsel.  These negotiations continued among the parties over a number of months, until a

preliminary settlement was reached on October 28, 2008.  Thereafter, the parties exchanged

numerous drafts of settlement agreements and other documents and engaged in extensive

negotiations of all of the terms contained in the Settlement Agreement and Exhibits attached

thereto.  The parties finalized the Settlement Agreement on June 26, 2009.

 The parties reviewed all relevant documents and information regarding the number of

hours worked by each and every Specialist, their compensation and their duties, as well as

Defendant's policies and procedures.  The Settlement reflects a compromise that takes into

account the strengths and weaknesses of both parties' respective positions and the risks and costs

of continued litigation, including trial and appeal.

 The terms of the settlement are set forth in the Settlement Agreement attached to the

Affidavit of Philip Gordon, submitted herewith.   The parties submit that the Settlement

Agreement is fair, adequate, and well within the range of reasonableness for class and collective

action settlements of this kind.  The Settlement Agreement meets the criteria for approval of

class and collective action settlements, and therefore both preliminary approval of the settlement

and provisional certification of the Settlement Class are appropriate for settlement purposes only.

 Concurrently with the present motion, pursuant to Federal Rule of Civil Procedure

15(a)(2) and with Defendant's consent, Plaintiff has filed a Second Amended Complaint limiting

the class of putative plaintiffs to Specialists employed and working in Massachusetts.

       B.    <u>Facts</u>.

At all relevant times, Defendant operated an office products company that advertises and sells products through the Internet and conducts a catalog and telephone sales operation. Defendant employed Specialists to work in their office headquarters, located in Framingham, Massachusetts.  Plaintiff worked for Defendant as a Specialist from September of 2002 until May 16, 2008, maintaining employment for several months after filing the lawsuit on October 1, 2007.

Among other things, the Specialists' principal job duties were to answer inbound telephone calls from Defendant's new and existing customers and assist those customers with product purchases.  The Specialists were divided into sub-groups depending upon the type of product handled.  Although the Plaintiff alleges that all Specialists performed the same basic duties and had the same basic responsibilities, regardless of their sub-group, Defendant disputes this.

As for working time, the Specialists allege that they performed work before the beginning and after the end of their shift, as well as on some weekends and often through lunch.  Defendant disputes Plaintiff's allegations regarding each category of time claimed, and there is limited documentation of the number of hours worked by Specialists during the relevant period.  In attempting, therefore, to verify the Specialists allegations regarding hours worked, the parties reviewed building security data, telephone data and a variety of information from Defendant's computer systems, including email correspondence and system log records. Although the data gleaned from these electronic sources does provide some information, it does not disclose definitively what actually happened on any given workday.

Furthermore, not surprisingly, the parties' views conflict on the conclusions that can be drawn from the data. Defendant would use the data to contend that the Specialists rarely worked hours in excess of 40 hours per week, and that when they did, they rarely exceeded 2 hours per week. Plaintiff would use the data in similar fashion to maintain that the data evidences significant additional time worked, placing the average closer to 11 hours per workweek.

    C.    <u>Disputed Legal Issues</u>.

There are numerous disputed legal issues in this case, the most important of which are summarized below. Both sides faced significant risks if any one or more of these issues were decided adversely to them. The Settlement purports to compromise the claims asserted in this action, taking into account the risks associated with the issues discussed below.

    1.    <u>Liability: Whether Specialists were exempt employees</u>.

The threshold issue in this case is whether Specialists were entitled to overtime compensation, or whether they were exempt employees under the FLSA and/or the Massachusetts overtime statutes. This, of course, is the win/lose proposition and would be the subject of considerable litigation, additional discovery and motion practice.

Defendant's primary defense relies on the administrative exemption, which if proven would gut the Plaintiff's claims. *See* 29 U.S.C. §213(a)(1) (establishing administrative employee exemption); 29 C.F.R. §541.2 (Department of Labor's regulations that set forth the criteria to qualify for the administrative employee exemption); M.G.L.c.151, §1A(3) (establishing administrative employee exemption); 455 C.M.R. §2.02(3) (stating that Massachusetts administrative employee exemption tracks the definition of the federal exemption under the FLSA). Plaintiff argues that Specialists do not qualify for the administrative exemption primarily because she asserts that her primary duty was not performing tasks directly related to

Defendant's management or general business operations and that she did not exercise any discretion and independent judgment with respect to matters of significance. Defendant takes issue with both of Plaintiff's arguments.

        2.      <u>Class certification</u>.

Defendant contends that the duties of each Specialist varied in material ways, and that because of this alleged variation, there could be no collective action treatment pursuant to the FLSA, 29 U.S.C. §216(b) (requiring that employees be similarly situated), and no class certification under Fed. R. Civ. P. 23 (requiring finding that common issue predominate).[3] Plaintiff disagrees.

        3.      <u>Willful Conduct</u>.

Were Plaintiff to prove that Defendant misclassified Specialists as exempt from the application of either the FLSA or the Massachusetts Overtime Statute, the Defendant's state of mind becomes relevant to determining damages. Under the FLSA, whether an employer acted in good or bad faith affects the damage calculus in two ways. Normally, an employee may recover double or "liquidated" damages under the FLSA when she prevails on a claim for unpaid overtime compensation. 29 U.S.C. §216(b). However, if the employer can show that the misclassification of the employee was actually a result of good faith conduct, the Court can limit the Plaintiff's recovery to the unpaid overtime wages and interest, precluding the recovery of double or "liquidated" damages. 29 U.S.C. §260. Second, if – on the contrary – the Plaintiff can show that the Defendant's failure to correctly classify the Specialists was willful or in bad faith, the FLSA's statute of limitations would be extended to cover a third year of violations. *See* 29

---

[3] For purposes of settlement, Defendants do not oppose either class certification pursuant to Rule 23 or collective action treatment pursuant to 29 U.S.C. §216(b). Should the Court not approve the Settlement, Defendants reserve the right to contest any representative action treatment for any claim.

U.S.C. §255(a).

Under Massachusetts law, however, a recent enactment impacting the Wage Act may make treble damages mandatory for the Massachusetts statutory claims asserted in this action. The parties will no doubt take different positions on whether the act can be applied retroactively to violations pre-dating its effectiveness on July 21, 2008.  But, whether or not the statutory clarification is applied retroactively, the Plaintiff may nevertheless be entitled to treble damages if she can prove the misclassification was made in bad faith.  *See Goodrow v. Lane Bryant, Inc.*, 432 Mass 165 (2000).

Here, Defendant argues strongly that all of their compensation decisions regarding Specialists were made in good faith, and that the recovery, if any, should not include the third year or any liquidated damages.  Plaintiff contends, however, that Defendant can show no sufficient evidence of good faith in their decisions and should thus be entitled to the third year. Furthermore, Plaintiff contends that they are entitled to multiple damages.

Given that these issues – liquidated damages and the statute of limitations – could add or subtract a full year of damages as well as trebling whatever damages are found, they impact the potential damages range significantly, both parties faced substantial risk should this issue be decided adversely to them.

        4.     <u>Regular rate of pay</u>.

Under federal and state overtime laws, an employee is entitled to "time and one-half" her "regular rate" of pay for all hours worked over 40 in a workweek.  Determining an employee's "regular rate" of pay can range from very simple to very complicated.  And determining whether an employee is entitled only to the overtime premium under a fluctuating workweek analysis is similarly complicated.  Resolving the methodology for calculating damages is a fact-intensive

undertaking with truly significant variations depending upon certain outcomes.  In this case, the Specialists were paid a base salary plus additional pay for commissions and production bonuses, further complicating the determinations.

If the Plaintiff's position were accepted, the overtime rate for the Specialists would average approximately $36.24/hour, taking into account the average amount earned in salary and production commissions.  If, however, the regular rate were calculated along the lines of the "fluctuating workweek" method, the result would be less than one-third that amount, approximately $12.08/hour for each overtime hour worked.  Given that this issue alone could affect the damages range significantly, both parties faced substantial risk should this issue be decided adversely to them.

        5.    <u>Overtime hours worked</u>.

Had the case proceeded to trial, the parties likely would have been required to submit extensive testimony regarding the amount of time worked by Specialists, given the lack of time records.  In addition to the time and expense required in order to present this evidence to the jury, both parties would have been faced with substantial uncertainty as to the ultimate determination that the jury might make with respect to the amount of uncompensated overtime worked by Specialists during the relevant periods. As set forth in the facts above, the parties also had very different estimates of the number of uncompensated overtime hours worked by Specialists.

Both sides would have been able to make non-frivolous arguments in support of their positions, requiring testimony from Specialists, their Managers, HR staff and other witnesses to the working time.  The issue ultimately would have been decided by the trier of fact and could have involved extensive discovery and additional trial testimony from a representative sample of the Specialists employed by Defendant during the relevant period.

Recognizing the substantial risks involved, the parties therefore worked to reach this Settlement.

III.     **SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT**

As an initial matter, the Defendant's compensation practices with respect to the Specialists changed on June 30, 2008 when Defendant re-classified the Specialists as non-exempt employees.

A.     The financial terms.

This Settlement will resolve the claims of all Specialists who do not opt out.  The Settlement contemplates the creation of a Settlement Fund in the amount set forth in the Settlement Agreement, for all Specialists who worked for Defendant in Massachusetts beginning October 1, 2004 (three years prior to the suit being filed) through June 30, 2008 (when the classification changed).  From this fund, the Settlement contemplates several deductions:

1.     Costs[4]

2.     Fee of a Settlement Administrator[5]

3.     Attorney's Fees[6]

4.     Additional Compensation to Plaintiff

5.     Employer's share of payroll taxes.[7]

Each one of these components will be explained in greater detail below.

---

[4] Plaintiff's Counsel has expended $3,100 to date in out-of-pocket expenses.

[5] Plaintiff's Counsel has received an estimate from a reputable settlement administration company, Rust Consulting, Inc., of approximately $20,713 to handle the administration of the proposed settlement. See Declaration of Philip J. Gordon, ¶15 attached hereto as Exhibit "1" (hereinafter "Gordon Decl.").

[6] Attorney's fees and additional compensation to Plaintiff are set forth below.

[7] The employer's share of payroll taxes applies only to one-half of the recovery, as the recovery is designated as 50% wages and 50% interest.

The Specialists together worked a total of approximately 4,565 weeks[8] during the relevant period.  Because the Defendant's compensation arrangements varied minimally among Specialists, the allocation formula focuses on how many full weekly pay periods the Specialists worked for Defendant.

Each Specialist will receive a percentage of the net Settlement Fund based on what percentage of full pay periods that Specialist worked (Letter (A) in fraction below) of the total number of full pay periods worked by all Specialists who elected to participate in the Settlement (Letter (B) in fraction below).[9]   The Specialists percentage share of the net Settlement Fund can be expressed in terms of this simple fraction:

(A) Number of Full Weeks Worked by Individual Specialist

---

(B) Total Number of Full Weeks Worked by All Specialists Participating in Settlement

To give the Court some perspective on the amount of compensation a Specialist can expect to receive under the Settlement, it is possible to estimate the amount each Specialist will receive per full workweek under the Settlement.

For example, if all eligible Specialists were to participate in the Settlement, the estimated amount of $503,200.00 remaining in the Settlement Fund after all of the anticipated expenses[10] would be divided by the 4,565 pay periods, such that each Specialist would receive approximately $105.57, after deduction for employer's share of payroll taxes.[11]

---

[8] This number of workweeks is based upon an anticipated class size of approximately 60 Specialists.
[9] The allocation formula is explained in detail in paragraphs 6 and 11(j) of the Settlement Agreement.
[10] As more fully set forth below, this assumes the following awards are approved, $260,700 attorneys fee, $8,000 additional compensation to the Plaintiff, $20,000 in settlement administration costs, and $3,100 in expense reimbursement.
[11] The employer's share of payroll taxes is estimated at $21.260.20, if all Settlement Class members participate in the Settlement.  This would be deducted from the Settlement Fund.

If the Plaintiff was to prevail on how to calculate the Specialists' regular rate of pay such that overtime was calculated at $36.24/hr, the Settlement would constitute approximately 3 hours of overtime per week.  If the Defendant was to prevail on how to calculate the regular rate such that overtime was calculated at $12.08, the Settlement would constitute approximately the equivalent of 9 hours of overtime per week.  For settlement purposes, these numbers also fit well within the range of 2 to 11 hours of overtime that might be extrapolated from hours data, as set forth more fully in the facts above.

Given the substantial risks Plaintiff faced not only on the regular rate issue, but on questions concerning liability, the number of overtime hours worked by Specialists, and class certification and collective action treatment, Plaintiff respectfully submits that the Settlement is a fair and reasonable recovery for the Specialists.

In sum, the Settlement not only properly takes into account the strengths and weaknesses of the Plaintiff's position, but also allows Specialists to receive a guaranteed payment now, without having to wait until the resolution of this case at trial, or, if necessary, on appeal.  Given the number of mixed questions of law and fact, each of which could have a significant effect on the damages, an appeal would have been likely.

      B.    <u>General Release; Partial Reversion to Staples; Cy Pres; and Substantial Notice Efforts</u>.

Defendant will obtain a general release of all federal and Massachusetts wage and hour type claims that could have been asserted in the action from every Settlement Class member who does not opt out.  In addition, the Settlement contemplates a partial reversion of funds to Defendant, consisting of all unclaimed funds except those paid to individuals who then elect not to cash their check or otherwise fail to do so.  Any funds then remaining will be paid to the designated cy pres charity, Ashoka or Boys & Girls Club of

America.  Although the practical likelihood of class members overlooking their potential

recovery is diminished because only 2 of the eligible settlement class members are

estimated to receive less than $500 (as compared to a coupon type case), the parties have

recognized, nevertheless, that failure to reach class members may improperly diminish the

opt-in rate.  As such, the parties have agreed to employ significant efforts to notify class

members of their claim and provide them with every opportunity to opt-in.  *See In re TJX*

*Companies Retail Security Breach Litigation*, 584 F.Supp.2d 395, 406 (D.Mass. 2008)

(expressing concern regarding unscrupulous class counsel).

   Among the assurances that all members will receive ample notice and opportunity

to participate in this matter, are the following procedural mechanisms:

1.   The Notice will indicate the estimated amount to be paid.

2.   Defendant will provide the Administrator with names, last known
     addresses and the last four digits of the Settlement Class member's
     social security number for purposes of conducting traces.

3.   Prior to the initial Notice mailing, the Administrator will conduct a
     preliminary search of the federal database for confirmation of
     addresses.

4.   If a Class member has not returned a claim form or opt-out form
     within 30 days, the Administrator may conduct a skip trace for that
     individual.  Then, the Administrator will mail a reminder post-card
     to those individuals it has not heard from.

5.   In the event that an individual elects to opt-in to the Settlement and
     then fails to cash his or her settlement check, an additional skip
     trace may be conducted and the check re-mailed.

6.   The Settlement Administrator will also file a Declaration with the
     Court prior to the final approval hearing regarding the efforts made
     to reach any Settlement Class member who failed to submit a Claim
     Form, and Opt-Out Form or a written objection.

   It is also important to note that more than half of the eligible Settlement Class

members are current employees of Defendant, and thus failure to receive notice is

extremely remote and unlikely.  Lastly, in an effort to protect against undue influence from

any immediate supervisors, the parties have agreed to a broad anti-retaliation provision as

well as a provision whereby the identities of those individuals who have opted in to the

matter will not be made known to any immediate supervisor of any Settlement Class

member who is a current employee.

      C.      The maximum potential request for attorneys' fees and costs is reasonable
<u>and within the range typically awarded by Courts in this District</u>.

Pursuant to Fed.R.Civ.P. Rule 23(h), and as set forth in the Settlement Agreement and

Notice, Plaintiff's Counsel will submit an application along with the parties' Motion for Final

Approval, or at an earlier time if the court so requests, seeking reimbursement of Counsel's out-

of-pocket expenses, with $3,100 incurred to date.  In addition, Plaintiff's Counsel will also

submit an application for attorneys' fees of thirty-three percent (33%) of the Settlement Fund, or

$260,700, an amount consistent with the percentage of common fund method permitted for

determining attorneys fees in class action settlements.  The request is also consistent with

Plaintiff's Counsel's lodestar, especially considering that the award of attorney's fees under the

Wage Act is mandatory and that there is substantial additional work to be done prior to and

following final approval.  *See* Gordon Decl. ¶ 11; G.L. c. 149 §150 (award of reasonable

attorneys fees and costs mandatory).

Counsel will also submit an application seeking reimbursement of the Fees and expenses

of the Settlement Administrator.  Rust Consulting, Inc. has submitted an estimate of

approximately $20,713 to administer the settlement.  *See* Gordon Decl. ¶ 15.  This includes cost

of mailing, skip tracing, telephone support, fund distribution, tax reporting and out-of pocket

expenses for sending notice to and administering the Settlement.

Defendant will not object to granting the Fee and Expense Award to Plaintiff's counsel or the Settlement Administrator, and any such award authorized by the Court shall be paid out of the Settlement Fund.[12]  The parties recognize that the First Circuit has frequently made such percentage of the fund awards in similar cases involving class action settlements of wage and hour disputes.[13]

The reasons that the First Circuit has favored the percentage of the fund method are relevant to the present case.  First, it properly rewards results and early settlement of complex cases.  In doing so, it also discourages lawyers from engaging in unproductive behavior or simply continuing to work a case at the expense of a potential early settlement.  Here, the parties could have expended hundreds more hours litigating class certification, collective action treatment, and partial summary judgment and summary judgment motions on liability or complex and fact-intensive issues pertaining to the regular rate and hours, among other issues.  Prior to doing so, additional discovery would have been warranted, including significant

---

[12] In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. Sep. 28, 2005) (noting that "First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee.").  The presence of a fee shifting provision in the wage statutes does not preclude the award of attorneys' fees on a percentage of the fund basis in the context of a class action settlement.  See also, Stein v. Smith, C.A. No. 01-10500-WGY (Oct. 18, 2005) (33% award in ERISA action which has a fee shifting provision in the statute); Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 563-64 (7th Cir. 1994)("[C]ommon fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund."); Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003)("there is no preclusion on recovery of common fund fees where a fee-shifting statute applies."); Ingram v. Coca-Cola Co., 200 F.R.D. 685 (N.D.Ga. 2001)(awarding fees based on a percentage of the common fund in Title VII class action).

[13] See, e.g., Macone v. Pongratz Enterprises, Civil Action No. 07-11360-PBS (D.Mass. September 8, 2008) (awarding Gordon Law Group, LLP, and co-counsel, attorney's fees of one-third of a settlement fund of $975,000 in class action overtime claim for sales executives); McLaughlin v. Liberty Mutual Ins. Co., C.A. No 01-11029 (D.Mass. December 21, 2005) (awarding $1.8 million in counsel fees on $6.4 million settlement of class action overtime claim); Loughran v. USAA, Inc., C.A. No. 00-12387 (D.Mass. October 19, 2002) (awarding attorneys' fees of one-third of a settlement fund of $820,000 in a FLSA collective action); Kane v. Gage Merchandising Services, C.A. No. 00-40185 (D.Mass. June 28, 2002) (awarding attorneys' fees of one-third of a settlement fund of $690,000 in a FLSA collective action); see also, In re Lupron Marketing and Sales Practices Litig., No. 01-10861-RGS, 2005 WL 2006833, *3 (D.Mass. Aug. 17, 2005) (noting the First Circuit's acknowledgment of advantages to the percentage method, specifically that "it is less burdensome to administer, it reduces the possibility of collateral disputes, it enhances efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace."); In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995), citing Federal Judicial Center, Awarding Attorneys' Fees and Managing Fee Litigation, 63-64 (1994).

deposition practice. Moreover, with an incomplete set of time records, there ultimately would have been a need to conduct individualized discovery from a significant sample of these employees in order to litigate the Specialists' damages. Instead, the parties conducted sufficient discovery on an accelerated basis so that they could fairly assess the merits of the case, and then engaged in informal mediations to assist them in promptly brokering a fair compromise. This is exactly the result that the percentage of the fund method is designed to produce.

In addition, although not required as a cross check, the multiplier in this case will be under 1.1, which is well below the multipliers regularly approved by courts in this district and will decrease in light of the substantial additional work to be done prior to and following final approval.[14] Counsel less experienced in wage and hour collective actions and class actions would likely have been unable to either assess or handle the case as efficiently and effectively as counsel here. Accordingly, this extremely modest multiplier, given the fair and reasonable results achieved for the Specialists, is more than warranted. At this stage, for purposes of preliminary approval only, Plaintiff's Counsel respectfully submits that its request for an award not exceeding $260,700, and reimbursement of costs not exceeding $4,000, is reasonable.

D.     The proposed additional compensation to the named Plaintiff Kirsten McCandless is reasonable under the circumstances.

The Settlement contemplates an award of additional compensation for the Plaintiff Kirsten McCandless of $8,000, to be paid out of the Settlement Fund. Plaintiff's Counsel respectfully submits that there are reasons to provide additional compensation for the efforts she has made in bringing about a Settlement which provides a substantial recovery for all other

---

[14] See Swack v. Credit Suisse First Boston, No. 02-11943-DPW (D. Mass. July 26, 2006) (multiplier of 1.7); Ahearn v. Credit Suisse First Boston LLC, No. 03-10956-JLT (D. Mass. June 7, 2006) (multiplier of 2.8); In re Aspen Technology, Inc. Sec. Litig., No. 04-12375-JLT (D. Mass. March 6, 2006) (multiplier of 6); In re CVS Corp Sec. Litig., No. 01-11464-JLT (D. Mass. September 7, 2005) (multiplier of 3.2); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. Sep. 28, 2005) (multiplier of 2.02).

Specialists. As described below, the modest amount requested here is consistent with the case law and appropriate given the facts of this case. Unlike a class action under the consumer protection laws, antitrust laws or securities laws, a plaintiff in an employment class action is called upon to make significant sacrifices beyond the time invested in prosecuting the action.

Because a current employee has an ongoing relationship with the defendant, there is always a risk of unlawful retaliation. Although there are anti-retaliation laws on the books, such cases can be difficult to prove, and provide little comfort to an employee entertaining the possibility of bringing an action against his or her employer. In real life, employees are hesitant to come forward and bring an individual action against an employer, let alone a representative action. In the case of Ms. McCandless, she was a current employee at the time she brought this action. And, although Ms. McCandless did not file any formal complaint for retaliation in connection with this lawsuit, she feared it. In addition, several of her colleagues that were aware of the lawsuit supported her, but they themselves indicated to her that they were unwilling to serve as lead plaintiffs for fear of retaliation. Had Ms. McCandless made the same decision that her colleagues made, this Settlement would not exist, and no Specialist would be receiving any compensation for these claims.

Even if the employee does not suffer any formal retaliation, the notoriety that inevitably arises as a result of prosecuting a representative action against an employer can adversely affect important professional and personal relationships. Ms. McCandless's experience was no exception. In ultimately seeking new employment, she did not use certain of her managers as a reference because she was concerned that her prosecution of this action would unfairly affect any assessment of her job performance. Ever since filing the lawsuit, she was uncomfortable in the workplace and believed her relationship with her managers and several other employees

deteriorated.    Although, again, she made no amendments to the complaint to add any such claims, and defendant denies that it engaged in any retaliation directed at Ms. McCandless or at anyone who supported her claims.

In addition to the sacrifices discussed above, Ms. McCandless also played a critical role in prosecuting this case and facilitating its settlement.  She not only regularly met with and conferred with counsel regarding written discovery, but she also helped prepare counsel and the computer forensics experts in their understanding of the computer systems to aid in the investigation efforts.  In addition, she worked diligently with other potential Class members to gather information pertaining to their experiences and actively assisted in the preparations for the multiple settlement negotiation sessions.  In performing these services for the Class, she also had to re-schedule several work obligations.  The $8,000 incentive award requested here also is consistent with the case law, especially given the specific circumstances of this case.[15]

Defendant will not object to granting the Additional Compensation Award to Plaintiff. Any such award authorized by the Court shall be paid out of the Settlement Fund, in a separate check and in addition to any amounts due to Plaintiff in connection with her status as a Settlement Class Member.  Plaintiff's Counsel respectfully submits that the amount requested here takes into account not only the time that Plaintiff has invested in the case, but also the risks she assumed (that others were unwilling to assume) by bringing this case.

---

[15] "Courts routinely approve additional compensation awards to compensate Representative Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citations omitted).  The amounts awarded are often substantial.  See Ingram, 200 F.R.D. at 694 (awarding $300,000 to each representative plaintiff in a two-year lawsuit); Beck v. Boeing Co., No. 00-CV-301P, at 4 (W.D. Wa. Oct. 8, 2004) (order approving award of $ 100,000 each to twelve named plaintiffs in four-year lawsuit); Roberts v. Texaco, Inc., 979 F. Supp. 185, 188-89 (S.D.N.Y. 1997) (approving awards of $ 85,000 and $ 50,000 to named plaintiffs in three-year lawsuit); see also, In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D.Mass. 2005) (awarding incentive compensation of $8,000 - $14,000 per named plaintiff over objection).

Accordingly, the parties respectfully request that the Court enter an order substantially in the form attached to the Settlement Agreement as Exhibit 7, which provides generally that, for settlement purposes only:

1.  The Court  certifiy a Class for settlement purposes only defined as:

    > Senior Product Solution Specialists who worked for Staples in Massachusetts between October 1, 2004 and June 30, 2008 and who have filed consents to join the Action and who have not opted-out of the Action (the "Settlement Class").

2.  The Court confirms Kirsten McCandless as the Class representative.

3.  The Court grants preliminary approval of the settlement on the terms set forth in the Settlement Agreement.

4.  The Court declares that settlement appears to the Court on its face to be fair, adequate and reasonable.

5.  The Court approves, as to form and content, the Notice, Claim Form and Opt-Out Form which are attached as Exhibits 3, 4 and 6, respectively, to the Settlement Agreement.  The Court finds that the dates and procedures selected for the mailing and distribution of the Notices set forth in paragraph 11 of the Settlement Agreement meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

6.  The Court sets a date for the Final Approval Hearing.

7.  The Court confirms the law firm Gordon Law Group, LLP as Class Counsel.

8.  The Court confirms Rust Consulting, Inc., having its offices at 625 Marquette Avenue, Suite 880, Minneapolis, MN 55402, as the Settlement Administrator.

## IV.    <u>LEGAL ARGUMENT</u>

### A.    <u>The Court Should Grant Preliminary Approval of the Settlement</u>.

It is axiomatic that the law favors the negotiated compromise of disputed claims.  *See*, *Durrett v. Housing Authority of the City of Providence*, 869 F.2d 600, 604 (1st Cir. 1990) ("the district court's discretion is restrained by the clear policy in favor of encouraging settlements"(quotations omitted)); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass.

18

2005) ("the law favors class action settlements"(quotations omitted)); *see also Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (noting the importance of encouraging settlement in the context of a wage and hour dispute). Settlement spares litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.

Federal Rule of Civil Procedure 23(e) provides that the Court's approval is required to effectuate any settlement of a class action. In accordance with this rule, the Court has a "special responsibility to protect class members." *Rolland v. Patrick*, 562 F. Supp. 2d 176, 178 (D. Mass. 2008). The ultimate determination as to whether a proposed class action settlement warrants approval resides in the Court's discretion. As discussed more fully below, there is clear evidence that the Settlement Agreement is well within the range of reasonableness for settlements of this type, and therefore preliminary approval is warranted.

1.    The standards and procedures for preliminary approval

Federal Rule of Civil Procedure 23(e) outlines the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
>    a.    The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>    b.    If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>    c.    The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>    d.    If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>    e.    Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Preliminary approval is the first step in a two-step process required before a class action may be finally settled.  Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (Fed. Jud. Ctr. 2004) ("Manual Fourth").  In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to consider final approval.  *Id.*  The Court is not required at this point to make a final determination.  Manual Fourth § 21.632, at 321.  In some cases, the Court's initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. Manual Fourth, §21.632 at 320-21.

In deciding whether a settlement should be approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement, notice of a formal Rule 23(e) hearing is given to the class members."  Manual Fourth, §21.633 at 322.   There is a strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations and sufficient discovery has taken place.  *See, e.g., City Partnership Co. v. Atlantic Acquisition Limited Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Durrett*, 800 F.2d at 604; *Rolland*, 562 F. Supp. 2d at 178; *Nilsen v. York County*, 382 F. Supp. 2d 206, 212 (D. Me. 2005).  The Court's final decision with regard to approval is then made after a final approval hearing.

The Court similarly may approve settlement of wage and hour claims, including FLSA

20

claims, upon its determination that the settlement is fair and reasonable. *Lynn's Food Stores*, 679 F.2d at 1353 ("if a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of wages, that are actually in dispute, [the Court should] approve the settlement in order to promote the policy of encouraging settlement of litigation."); *Urbino v. Puerto Rico Ry. Light & Power Co.*, 164 F.2d 12, 15 (1st Cir. 1947) (holding that a settlement of FLSA claims was properly approved by the district court where it was "fairly and honestly arrived at in an arm's length dealing.").

> 2.     The settlement is fair, reasonable and adequate

In evaluating a proposed settlement for fairness, courts generally address a number of factors:

> (1) a comparison of the proposed settlement with the likely outcome of litigation;
> (2) the stage at which the matter settled and the amount of discovery completed;
> (3) the reaction of the class to the settlement, including the number of objectors
> and the nature of the objections; (4) the quality of the plaintiffs' lawyers; (5) the
> conduct of the negotiations; and (6) the prospects of the case, including risk,
> complexity, expense, and duration.

*Nilsen*, 382 F. Supp. 2d at 212 (citing *In re Compact Disc Advertised Minimum Price Antitrust Litigation*, 292 F. Supp. 2d 184, 189 (D. Me. 2003)). Here, each of these factors favors approval of the Settlement Agreement.

First and foremost, the settlement secures a significant pecuniary recovery for the class. Second, the settlement has been reached at an appropriate stage of the proceedings. Plaintiff initiated this case more than a year and a half ago, and since that time Plaintiff's counsel conducted a diligent and thorough investigation into the facts of this lawsuit, which included, among other things, substantial witness interviews, consultation with third-party computer forensics experts, and review of thousands of pages of confidential documents produced by the Defendants pursuant to informal discovery agreed to by the parties. Third, the parties have each

been represented by experienced and qualified counsel who have concluded that the proposed settlement is fair and strongly favors approval. *See Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Financial Corp.*, *SMA*, 50 F. Supp.2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys."). Fourth, the manner in which negotiations were conducted further supports approval of the settlement. The proposed Settlement Agreement is the product of "serious, informed, non-collusive negotiations." Manual Fourth, § 30.41 at 265. As discussed *supra*, settlement discussions stretched over more than sixteen months and involved extensive, highly adversarial settlement meetings between the parties, as well as two mediation sessions. There is plainly no collusion with respect to this proposed Settlement Agreement. Finally, the risks and burdens of continued litigation are great as to both Plaintiffs and Defendants, especially given the complexities and expenses associated with litigating a wage and hour class action of this type through motions for class certification, decertification, summary judgment and trial. In contrast, the Settlement Agreement, as outlined above, will result in significant payments to Settlement Class members.

The parties' proposed distribution of the settlement funds also warrants approval. Each Settlement Class member's individual award will be fairly determined based upon his or her number of full work weeks worked during the relevant time periods, and, as set forth more fully above, the class representative enhancements are fair and reasonable.

B.    <u>Provisional Certification of a Settlement Class is appropriate and notice is adequate</u>.

The Supreme Court has recognized that the benefits of a proposed settlement in a case such as this can only be realized through the certification of a settlement class. *See Amchem,* 521 U.S. at 591.  Plaintiff Kirsten McCandless sought to bring this action on a representative basis on behalf of all other Specialists who worked for Defendant in Massachusetts during the applicable statutory periods.    The Settlement contemplates a single procedural mechanism by which such persons will be afforded an opportunity to receive a Settlement Award.  The parties request that the Court certify the Class for settlement purposes only.  Although Defendants continue to deny liability in this action and retain the right to fully litigate any future motion for certification of a litigation class in this case, they do not oppose the certification of a settlement-only class.  As set forth below, all the elements of Rule 23 are met with respect to the proposed Settlement Class, which, accordingly, merits conditional certification.

If the Settlement is preliminarily approved, Specialists will be provided with a notice explaining the terms of the proposed Settlement and their right to opt in, opt out or object to any of its terms.[16]  Any Specialist who does not wish to participate in the Settlement may also simply decline participation by taking no further action, although their claims will be released.

1.    <u>Class Certification is Appropriate Pursuant to F.R.C.P. 23</u>.

The parties respectfully submit that the certification of the proposed Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, especially considering that the class is for settlement purposes only, and that therefore the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)

---

[16] A copy of the proposed notice is attached to the Settlement Agreement.

(internal quotations and citations omitted).

Rule 23(a) requires that the Plaintiff establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires that the Court find that the questions of law or fact common to class members will predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  In determining whether these requirements have been met, the Court considers: (a) the class members' interest in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.  Each of these requirements is readily met here.

> a.    Numerosity – the Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  The number of potential class members by itself is not always determinative of numerosity.  *See Andrews v. Bechtel Power Corp.*, 780n F.2d 124, 131 (1st Cir. 1985). However, courts commonly treat a proposed class of at least forty members as meeting the numerosity requirement of this rule.  *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 337, 342 (D. Mass. 2003).  Here, where the proposed settlement class is greater than forty, joinder is clearly impracticable and numerosity is established.

> b.    Commonality – there are common questions of law and fact.

Questions of whether a category of employees, such as the Specialists, were properly

classified as exempt from the overtime laws, and whether any alleged misclassification was in bad faith, are classic common questions of the type contemplated by F.R.C.P. 23(a)(2).

            c.      <u>Typicality – Plaintiff's claims are typical of the Class</u>.

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Natchitoches Parish Hospital Service District v. Tyco International, LTD.*, 247 F.R.D. 253, 264 (D.Mass. 2008) (internal quotations and citations omitted). Typicality does not require that all putative class members share identical claims. *Id.* Here, Plaintiff McCandless advances a claim that Defendant's common policy of treating all Specialists as exempt from federal and Massachusetts overtime laws injured her and all putative class members, because it resulted in an underpayment of wages for all hours worked over forty in any workweek. There is no material variation between the claim of Plaintiff and the claims of class members.

            d.      <u>Adequacy</u>.

The adequacy inquiry serves to uncover conflicts of interest between the named party and the putative class. *Natchitoches*, 247 F.R.D. at 265. The conflict must be "fundamental" and cannot be "speculative." *Id.* Here, there is no conflict between Plaintiff McCandless and the putative class. Both seek to recover unpaid wages for overtime hours worked, and no other aspect of the employment relationship is challenged. Accordingly, the adequacy prong is satisfied. In addition, Plaintiff McCandless has retained the services of a law firm which regularly handles federal and state wage claims, individually and as class actions. *See* Gordon Decl. ¶ 4, filed in conjunction with this Motion. By retaining experienced counsel specializing in this complex area of the law, Plaintiff was able to prosecute this case more efficiently and more

effectively than had she retained the services of lawyers who represent employees in general litigation concerning all aspects of the employment relationship, or lawyers who typically handle class actions but lack expertise in handling employee wage claims.

    e.  <u>Predominance and Superiority</u>.

   Typically, overtime misclassification class actions are model examples of class claims in which common questions of fact and law predominate. In cases like this one, only the damage analysis varies from class member to class member, and this is generally not sufficient to preclude a finding of predominance. *Liberty Mutual*, 224 F.R.D. at 312; *see also, Natchitoches*, 247 F.R.D. at 269 (noting that individual damages determinations do not defeat finding of predominance). In addition, this action presents the superior mechanism to resolve the claims of the putative class. *Liberty Mutual*, 224 F.R.D. at 312 ("[r]esolution of the common issues in a single judicial forum will promote judicial economy and uniformity of outcome."). This is especially the case here given that the case has been resolved by a settlement which provides substantial relief to all putative class members.

   Moreover, none of the other pertinent factors often relevant to a predominance or superiority inquiry are relevant here. There is no other pending litigation concerning these issues, and there is no evidence that any putative class member seeks to control the prosecution of his or her claim. Indeed, the amount in controversy for any one class member would make it difficult for a Specialist to obtain counsel who would provide representation for an individual case. If there are any such individuals who do seek to prosecute an individual claim, that person can opt out of the Settlement and can thereafter pursue his or her own claim, as the Rule 23(e) notice will inform all putative class members if the Settlement is preliminarily approved. Finally, as discussed above, there is no need to inquire into manageability concerns here because

the certification is for settlement purposes only.  *Mowbray*, 208 F.3d at 298.

                2.    <u>Collective Action Treatment is Appropriate Pursuant to 29 U.S.C.
§216(b)</u>.

The FLSA specifically provides at 29 U.S.C. §216(b) that any employer who fails to pay

its employees overtime compensation subjects itself to a potential representative action:

> An action to recover [overtime compensation] may be maintained against any
> employer … in any federal or state court of competent jurisdiction *by any one or
> more employees for or in behalf of himself or themselves and other employees
> similarly situated*.

*Id.* (emphasis added).

In *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court

construed the enforcement provisions of the FLSA quoted above.[17]  The Court observed that a

collective action authorized by §216(b):

> allows … plaintiffs the advantage of lower individual costs to vindicate rights by
> the pooling of resources.  The judicial system benefits by efficient resolution in
> one proceeding of common issues of law and fact arising from the same alleged
> discriminatory activity.

*Hoffman-LaRoche*, 493 U.S. at 170.

In *Reeves v. Alliant Tech Systems, Inc.*, 77 F.Supp.2d 242 (D.R.I. 1999), the Court

discussed the procedure to be followed in determining whether and how to authorize the

promulgation of notice in FLSA actions:  "The threshold issue in deciding whether to authorize

… notice in a FLSA action is whether plaintiffs have demonstrated that potential class members

are 'similarly situated.'"  *Reeves*, 77 F. Supp.2d at 246.  The Court went on to point out that

"courts have held that plaintiffs can meet this burden by simply alleging 'that the [employees]

were together the victims of a single decision, policy or plan' that violated the law."  *Id.*, at 247.

---

[17] <u>Hoffman v. LaRoche</u> involved the Age Discrimination In Employment Act of 1967.  However, that statute
explicitly incorporates the FLSA enforcement provisions contained in 29 U.S.C. §216(b).

The parties submit that for purposes of settlement, this matter meets the requirements for collective action treatment much as it does for class certification.

    3. <u>Notice is adequate</u>.

  Rule 23(e)(1)(B) provides that notice must be sent to class members prior to final approval of a settlement by the Court. The attached Notice provides ample information about the litigation and the settlement to allow an informed choice. The Notice provides an explanation of the suit, a summary of the material settlement terms, the estimated amount of recovery, the date for the final approval hearing and a description of the opt-in, opt-out and objection procedures. Lastly, the plan for mailing is appropriate, and the additional measures for locating Class members are unique protections that provide further support for a finding that the notice is adequate.

## V. CONCLUSION

  For the reasons stated herein, the parties respectfully requests that the Court enter an order substantially in the form attached to the Joint Motion as Exhibit A, which provides generally that for settlement purposes only:

    1. The Court conditionally certifies a Settlement Class defined as:

> Senior Product Solution Specialists who worked for Staples in Massachusetts between October 1, 2004 and June 30, 2008 and who have filed consents to join the Action and who have not opted-out of the Action (the "Class").

    2. The Court confirms Kirsten McCandless as the Class representative.

    3. The Court grants preliminary approval of the settlement on the terms set forth in the Settlement Agreement.

    4. The Court declares that settlement appears to the Court on its face to be fair, adequate and reasonable.

    5. The Court approves, as to form and content, the Notice, Claim Form and Opt-Out

6.      The Court sets a date for the Final Approval Hearing.

7.      The Court confirms the law firm Gordon Law Group, LLP as Class Counsel.

8.      The Court confirms Rust Consulting, Inc., having its offices at 625 Marquette Avenue, Suite 880, Minneapolis, MN 55402, as the Settlement Administrator.

Respectfully submitted,

For the Defendant,                          For the Plaintiff and the Class,

/s/ Ariel D. Cudkowicz                      /s/ Philip J. Gordon
Ariel D. Cudkowicz (BBO #505577)            Philip J. Gordon (BBO #630989)
Krista Green Pratt (BBO #)                  Kristen M. Hurley (BBO #658237)
SEYFARTH SHAW LLP                           GORDON LAW GROUP LLP
2 Seaport Lane                              585 Boylston Street
World trade Center East                     Boston, Massachusetts 02116
Suite 300                                   (617) 536-1800
Boston, Massachusetts 02210
(617) 946-4800

Dated: August 19, 2009